## Commonwealth v. Savage

*Howard R. Berninger*, District Attorney, for Commonwealth.

*Franklin E. Kepner*, for defendant.

KREISHER, P. J., April 3, 1959.—On December 13, at approximately 4:50 p.m., a duly authorized deputy game protector was on patrol with his wife in his own Ford station wagon.

It was the closing moments of the antlered deer season and as he approached a car parked 10 or 15 feet off a lonely dirt road which was covered with ice and snow near the village of Waller in the foothills of the North Mountain, he noticed the above captioned defendant in the driver's seat and a passenger in the rear seat. As he approached, both occupants bent over and made movements that indicated to him that they were endeavoring to manipulate the actions of their rifles so as to unload them.

The officer was not in uniform nor did he wear a badge. However, he parked his car along the road and walked through the field to the parked car, and since the passenger in the rear seat had been bent over for a considerable period of time, he asked him if he was having trouble getting his gun unloaded.

The passenger answered: "No, we didn't see many deer today." The officer then repeated the question and the passenger answered: "It is unloaded." And the officer observed: "Yes, I see it is now ok."

He then turned to defendant in the front seat, who in the meantime had placed his bolt action 30.06 rifle on the floor with the bolt open, but turned away from the officer so that he could not see the action. It was a clip type rifle and defendant had removed the clip and placed it upon the front seat near a large spotlight as is customarily used illegally for spotting deer. The officer then asked defendant if his rifle was unloaded and he answered: "It is ok."

The officer then identified himself by saying: "I am a game protector and I would like to have you turn your rifle over so I can see the action." Defendant said: "No. I won't turn it over." The officer answered: "Well, then I will," and started to walk around the car, whereupon defendant reached over and locked the right front door, This caused the officer to come back to the driver's side, and as he approached, defendant locked the left front door and turned up the window. This caused the officer to move to the rear of the car and while he was writing down the license number of the car, defendant started the motor and drove off at a fast rate of speed.

The officer immediately gave chase, but after traveling some miles, gave up because of the bad road conditions.

He then reported this incident to his superiors who caused the above captioned prosecution to be insti-

tuted, and after a hearing before a justice of the peace, defendant was found guilty of resisting inspection in violation of The Game Law of June 3, 1937, P. L. 1225, art. XII, sec. 1207, 34 PS §1311-1207, which provides:

"Any person who by force, menace, threat, or in any manner resists inspection or arrest for violation of any of the provisions of this act, or refuses to go with an officer after an arrest has been made, or interferes with any officer of the Commonwealth in the performance of his duty under the provisions of this act, shall, upon conviction, be sentenced to pay a fine of one hundred dollars and costs of prosecution, and, in default of the payment of such fine and costs, shall be imprisoned one day for each dollar of fine and costs."

By virtue of The Game Law of 1937, as amended, April 18, 1949, P. L. 509, sec. 3, 34 PS §1311-1210, defendant appealed and the matter is now before the court for disposition.

Said act provides, inter alia, as follows:

"Any person convicted of violating any of the provisions of this act may enter into good and sufficient recognizance to pay the fine imposed and costs within a period of ten days after the date of his conviction, or may certiorari the proceedings to the court of common pleas within five days following conviction, or may appeal the proceedings within five days after such conviction to the court of quarter sessions of the county in which convicted. Any prosecutor, dissatisfied with the finding of any magistrate, alderman, or justice of the peace, may, in like manner, appeal to said court within said period. All such appeals shall be only on allowance of the court of quarter sessions or a judge thereof, on cause shown, hearings thereon shall be de novo, and shall be determined by the court of quarter sessions without a jury."

The testimony of defendant and his corroborating passenger endeavors to explain their actions by indicating that since the officer was not in uniform and failed to exhibit his badge, they were scared and they thought it was a holdup. This alleged fright, they say, caused defendant to refuse to show his gun and to drive away.

This testimony was most unimpressive, unconvincing and not worthy of much credit or belief in our opinion. When the court inquired of the passenger his reason for being in the rear seat, he explained they were waiting for another hunter still in the woods, who rode in the front seat. However, they drove away without this other hunter and went directly to their homes.

Likewise, their explanation for having a spotlight on the front seat is not only absurd but also unbelievable so that we have no difficulty in concluding that the true facts of this occurrence reek with illegality and a flaunting disregard for law and order.

This is a criminal prosecution which requires a strict construction of the law. Defendant is presumed to be innocent and the burden is upon the Commonwealth to prove defendant's guilt beyond a reasonable doubt.

The testimony clearly indicates that the Commonwealth has met this burden, but we are confronted with the technical defense which the legislature imposed when it enumerated the powers of the members of the Game Commission, its directors, game protectors and deputies when the game laws were codified in 1937.

Article II, sec. 214, 34 PS §1311-214, provides, inter alia, as follows:

"Each member of the commission, the director, and each of its lawfully qualified representatives shall have the power: . . .

"(h) To stop and inspect or search at any time, without warrant, any vehicle or conveyance, and its occupants or contents, any time or place within this Commonwealth: Provided, however, such officer shall be in uniform and display his badge or other insignia of identification and shall state to the person in charge of said vehicle or conveyance the purpose of the inspection or search."

Section 208 of The Game Law, 34 PS §1311-208, provides:

"The commission may appoint competent men throughout the Commonwealth, to be known as deputy game protectors, in such numbers as the commission may deem necessary, who shall possess the rights and powers given by law to game protectors, and be subject to all requirements and regulations, either of the law or of rules of the commission controlling the action of such game protectors. . . ."

In the case of Commonwealth v. Butler, 40 D. & C. 358, the above quoted section of The Game Law giving game protectors the right to search any vehicle and its occupants without a warrant was held to be constitutional, and that in deer season in deer country, a special uniform was not a requirement providing the officer had on his person in conspicuous view his badge of authority.

In this case it was shown that defendant who was stopped by the officers knew they were game protectors because he had been stopped the previous day in the woods by the same officers and the officers wore in full view their badge of authority.

Our late friend, Judge Hipple of Clinton County, who wrote the opinion in this case, in arriving at the conclusion that a special uniform was not necessary even though so provided in the act, states on page 362 the following:

"Any person familiar with the hunting of deer during the open season knows that it is impossible for a game protector to properly enforce The Game Law in the areas where deer are hunted, if the game protector is compelled to wear a special uniform which sets him apart from persons engaged in hunting. Any hunter knows that the game protectors are clothed in substantially the same type of hunting clothing which is worn by the hunters themselves, but the game protectors do have with them the badge or insignia of their office, which is worn upon their clothing and can be readily seen by any person, particularly those who come in close contact with them, as defendant did. Defendant actually knew that Reeder and Farwell were game protectors acting in the line of their duty, because they had identified themselves to him the previous day, and had inspected his firearm and rifle."

In the case of Commonwealth v. Rhone, 174 Pa. Superior Ct. 166, it was held that this section of The Game Law permitting a search without a warrant was constitutional and a defendant who refused to open the trunk of his automobile for inspection by the officers was found guilty. In this case, however, defendant was stopped by a member of the Pennsylvania State Police, who was in full uniform, and the officers demanding the inspection were likewise in uniform in compliance with the act, and it is stated on page 169 of the opinion:

"Appellant was fully aware that a road check was being made by duly authorized officers of the Pennsylvania Game Commission. The automobile he was operating was stopped by a deputy game protector who was in uniform; the officer who first spoke to him displayed his badge and other insignia of identification, and he was repeatedly advised the purpose of the inspection was to determine whether any legally or illeg-

ally killed game was in the vehicle or on the person of those who had been hunting.

"Appellant contends his refusal to comply with the request of the officers, unaccompanied by force, menace or threats of violence, does not constitute resistance to inspection within the meaning of §1207 of The Game Law. That section makes it unlawful to resist inspection 'in any manner'. There is no requirement that force or violence be used in order to constitute resistance within the purview of this section of The Game Law. The words 'by force, menace, threat,' describe specific methods of resistance which are prohibited, but that such methods are not exclusive, nor the scope of prescribed resistance so limited is fully established by the very plain meaning of the phrase 'or in any manner' immediately following in the wording of the section. The wilful and repeated refusal of the appellant to open the rear compartment of the automobile and his refusal to allow his wife to surrender the key to the compartment to the district game protector and his deputies constitutes resistance to inspection within the meaning of §1207 of The Game Law."

The testimony in the present case clearly indicates that the officer was neither in uniform nor did he in any manner exhibit or show defendant his badge or insignia of office.

We have only the very highest regard and esteem for this officer, and we have no doubt whatsoever that defendant violated the said section of The Game Law, but because of the mandatory provisions set forth in the code, we are required to reluctantly sustain the appeal, and to this end we make the following:

### Order

And now, to wit, April 3, 1959, the appeal is sustained and the costs are placed upon the County of Columbia.